IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID HATCHIGIAN | : |
|     Plaintiff, | :    CIVIL ACTION |
| v. | : |
| | :    NO. 11-5177 |
| I.B.E.W. LOCAL 98, HEALTH & WELFARE FUND, *et al.* | : |
|     Defendants. | : |

MEMORANDUM

BUCKWALTER, S.J.                                                                         January 15, 2013

Currently pending before the Court is the Motion for Summary Judgment of Defendants International Brotherhood of Electrical Workers Local Union No. 98 Health and Welfare Fund ("Welfare Fund") and the Board of Trustees of Local Union No. 98 Health & Welfare Fund ("Trustees"). For the following reasons, the Motion is granted.

I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of Plaintiff David Hatchigian's claim that he was improperly denied benefits by Defendants who allegedly acted in an arbitrary and capricious manner.

The International Brotherhood of Electrical Workers, Local Union No. 98 Health and Welfare Fund is a trust fund established under 29 U.S.C. § 186(c)(5) to fund benefits for employees. (Defs.' Mot. Summ. J., Ex. 3, IBEW Revised Trust Agreement, D40201–D40230.) The Welfare Fund provides benefits to employees represented by a labor union, the IBEW Local Union No. 98, in collective bargaining with employers. (Defs.' Mot. Summ. J., Ex. 3, IBEW

AFL-CIO Health and Welfare Fund Summary Plan Description ("Benefits Plan Description"), D20029.) Plaintiff David Hatchigian is a participant in the Welfare Fund. (Compl. ¶ 3; Answer ¶ 3.)

On August 17, 2007, Mr. Hatchigian received notice from the Welfare Fund that his benefits were being terminated because he did not meet the minimum requirement of three hundred and fifty hours worked during the previous quarter. (Defs.' Mot. Summ. J., Ex. 3, Aug. 17, 2007 Letter from Debra Rand-Gerber to David Hatchigian, D00058.) The notice also informed him that he could choose to elect continuing coverage through self-payment pursuant to the Consolidated Omnibus Budget Reconciliation Act (COBRA). (Id.)

In a letter dated September 21, 2007, Mr. Hatchigian then wrote to Harry Foy, President of IBEW Local Union 98, that he was appealing the termination of his benefits. (Defs.' Mot. Summ J., Ex. 3, Sept. 21, 2007 Letter from Hatchigian to Foy, D00060.) In this letter, Mr. Hatchigian claimed he was eligible for continued coverage under Section E of the Health and Welfare Benefits Plan. (Id.) Section E, entitled "Supplemental Coverage Under Emergency Economic Conditions," provides for continuing coverage to employees "who are on work layoff and cannot find work opportunities due to economic conditions." (Benefits Plan Description, D20056.) The Section notes that such supplemental coverage is available "[t]o the extent the Trustees determine that the Plan's assets are sufficient," and notes that the Trustees "may" provide for benefits for such individuals. (Id.) The Plan later states, however, that, "[u]pon determination that the Plan's assets are sufficient and economic conditions warrant, the Fund **will** provide supplemental coverage." (Id.) (Emphasis added) Finally, at the conclusion of the section, the Plan states that "the trustees have the power and duty to terminate coverage or to revise the

2

conditions for coverage under this provision at any time they determine that such termination or revision is necessary to preserve the fund's assets or that economic conditions have changed." (Id., original text in bold typeface and all caps).

Mr. Foy responded to this letter on October 11, noting that the letter was misdirected to the wrong person and needed to be addressed to the Board of Trustees of the Health and Welfare Fund's Trustees. (Defs.' Mot. Summ. J., Ex. 3, Oct. 11, 2007 Letter from Foy to Hatchigian, D00061.) Mr. Hatchigian subsequently sent an appeal on November 19 to the Welfare Fund raising the same concerns as in his letter to Foy. (Defs.' Mot. Summ. J., Ex. 3, Nov. 19, 2007 Letter from Hatchigian to Welfare Fund, D00080–81.) This appeal was denied in a November 29 letter sent from Frank M. Vaccaro and Associates, administrators of the Welfare Fund. (Defs.' Mot. Summ. J., Ex. 1, Nov. 29, 2007 Letter from Vaccaro to Hatchigian, D00215–17.) In this letter, the Fund noted that the Trustees had decided not to invoke Section E:

> [C]ontinued coverage under Section E is only provided if the Trustee's [sic] make a determination that the Plan's assets are sufficient and that economic conditions warrant the extension of coverage. The Trustees however, have not made a determination that economic conditions warrant the continuation of coverage in 2007 for individuals who are on layoff. Accordingly, the Trustees have not invoked the provisions of Section E.

(Id.)

Mr. Hatchigian sent an amended communication to the Fund, reiterating his appeal from November 19 that he was eligible for Supplemental Coverage under Section E. (Defs.' Mot. Summ. J., Ex. 3, Nov. 30 2007 Letter from Hatchigian to Welfare Fund, D00095.) This second appeal was considered and denied by the Board of Trustees at their January 2008 meeting, and Mr. Hatchigian was subsequently notified of the decision in a January 22, 2008 letter. (Defs.'

3

Mot. Summ. J., Ex. 3, Jan. 2008 IBEW Health & Welfare Fund Trustees' Meeting Minutes, D40129; Complaint ¶ 22–23; Answer ¶ 22–23.)

During the August 2007 quarter, Mr. Hatchigian was eligible for and elected to receive COBRA continuing coverage by self payment. (Defs.' Mot. Summ. J., Ex. 3, COBRA Application Checklist, Participant Contribution Inquiry, and Screen Printout Noting Coverage, D10051–53.) On November 6, 2007, the Welfare Fund notified Hatchigian that his COBRA coverage was terminated for August 2007 because he did not pay the required premium. (Defs.' Mot. Summ. J., Ex. 3, Nov. 6, 2007 Letter From Vaccaro to Hatchigian re: COBRA, D00070.) The subsequent two quarters, from November 2007 through April 2008, Mr. Hatchigian was eligible for benefits due to working the requisite number of hours. (Defs.' Mot. Summ. J., Ex. 3, Nov. 16, 2007 Draft Letter from Gerber to Hatchigian, D00079.)

In the January 2008 work quarter, Mr. Hatchigian again was under the minimum 350 hour requirement. (Defs.' Mot. Summ. J., Ex. 3, Nov. 2, 2010 Draft Letter from Gerber to Hatchigian, Attachment of Work Hours Printout, D00196.) Mr. Hatchigian was notified that he was ineligible for benefits and could again elect self-payment rights under COBRA. (Defs.' Mot. Summ. J., Ex. 3, May 27, 2008 Letter from Gerber to Hatchigian, D00102.) Though Mr. Hatchigian again elected to receive continuing coverage under COBRA, there is no record of any COBRA payment by Mr. Hatchigian for this benefit quarter. (Defs.' Mot. Summ. J., Ex. 3, May 27, 2008 COBRA Application Checklist, D10070.)

For the next eight quarters, Mr. Hatchigian was ineligible for benefits, as he did not meet the minimum 350 hours during any period. (Defs.' Mot. Summ. J., Ex. 3, Nov. 2, 2010 Draft Letter from Gerber to Hatchigian, Attachment of Work Hours Printout, D00193–96.) After

being denied coverage during this time frame, Mr. Hatchigian eventually retired and was granted long term coverage for health benefits on June 1, 2010. (Complaint ¶ 28; Answer ¶ 28.)

Mr. Hatchigian brought suit on August 15, 2011 bringing two counts: (1) Violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") and (2) Violation of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 et seq. Defendants filed the current Motion for Summary Judgment on both counts on October 10, 2012. Plaintiff filed a Response in Opposition on November 26, 2012, and then a Supplemental Response on December 26, 2012. The Court now considers the merits of the Motion.

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in

the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson, 477 U.S. at 249–50.

## III. DISCUSSION

### A. Hatchigian's ERISA Claim

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the United States Supreme Court held that, when evaluating challenges to denials of benefits in actions brought under 29 U.S.C. § 1132(a)(1)(B), district courts are to review the plan administrator's decision under a *de novo* standard of review, unless the plan grants discretionary authority to the administrator or fiduciary to determine eligibility for benefits or interpret the terms of the plan. Id. at 115. Thus when, as here,[1] discretionary authority is given to an administrator of a plan, a deferential standard of arbitrary and capricious is applied. Id. at 111; Estate of Schwing v. Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009); Kalp v. Life Ins. Co. of N. Am., No. Civ.A.08-1005, 2009 WL 261189, at *1 (W.D. Pa. Feb. 4, 2009). In such cases, a court may overturn a plan administrator's decision only if that decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387 (3d. Cir. 2000), abrogated on other grounds, Schwing, 562 F.3d at 525; see also Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1141 (3d Cir. 1993) ("[W]hen the arbitrary and capricious standard applies, the decision maker's determination to deny benefits must be upheld unless it was 'clear error' or 'not rational.'") (internal quotation omitted). "The scope of this review is narrow, and 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" Doroshow v. Hartford Life & Accident Ins. Co., 574 F.3d 230, 234 (3d Cir. 2009) (quoting Abnathya v. Hoffman-La Roche, Inc., 2 F.3d

---

[1] "[B]oth David Hatchigaian and the Defendants agree that the standard of review is not de novo but rather the deferential standard." (Pls. Resp. Opp'n Summ. J. 8.)

40, 45 (3d Cir. 1993), cert. denied, 30 S. Ct. 1060 (2010)); see also Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 (3d Cir. 2010); Brown v. First Reliance Standard Life Ins. Co., No. Civ.A.10-486, 2011 WL 1044664, at *5 (W.D. Pa. Mar. 18, 2011). Such a deferential review "promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation." Conkright v. Frommert, 130 S. Ct. 1640, 1649 (2010).

On a motion for summary judgment in an ERISA case where the plaintiff claims that benefits were improperly denied, a reviewing court is generally limited to the facts known to the plan administrator at the time the decision was made. Post v. Hartford Ins. Co., 501 F.3d 154, 168 (3d Cir. 2007), overruled on other grounds, 574 F.3d 230 (3d Cir. 2009). "Consequently, when, as here, a plaintiff alleges that a plan administrator, such as [the Fund's Trustees], abused its discretion in deciding to terminate benefits, [the Court] generally limit[s] [its] review to the administrative record, that is, to the 'evidence that was before the administrator when [it] made the decision being reviewed.'" Sivalingam v. Unum Provident Corp., 735 F. Supp. 2d 189, 194 (E.D. Pa. 2010) (quoting Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997)); see also Johnson v. UMWA Health & Ret. Funds, 125 F. App'x 400, 405 (3d Cir. 2005) ("This Court has made clear that the record for arbitrary and capricious review of ERISA benefits denial is the record made before the Plan administrator, which cannot be supplemented during the litigation.")

In the current case, Mr. Hatchigian does not dispute that he failed to work the minimum 350 hours for the work quarter of April–June 2007. The crux of his claim is that (1) he failed to meet his hours during this period due to a shortage of work hours, (2) he was willing and able to work, and (3) the Trustees acted in an arbitrary and capricious manner by failing to invoke

8

Article IV, Section E. Supplemental Coverage for this period.

In support of this argument, Mr. Hatchigian relies on a written statement that the Health and Welfare Fund provided to the United States Department of Labor regarding when it decides to invoke Section E. Supplemental Coverage. In this statement, the Health and Welfare Fund stated:

> In determining whether or not to provide supplemental coverage, the Trustees review the overall work hours and employment opportunities available to participants as a whole. Supplemental coverage is extended only when the Trustees conclude that a sufficient number of participants are unable to find work opportunities due to economic conditions and through no fault of their own. There is no magic formula used in making that determination. Rather it is a decision made based on the facts and circumstances at the time[.]

(Defs.' Mot. Summ. J., Ex. 3, July 22, 2008 letter from Josem to Fontenot, D00110-111.) Accepting that this as the standard by which the Fund decides when to invoke Section E, Mr. Hatchigian then notes that a number of Board Trustees stated in deposition testimony that they failed to consider Daily Out of Work ("DOW") lists, which he states are "the only conclusive tally and barometer of unemployment throughout the Union." (Pl.'s Resp. Opp'n Summ. J., 15.) By failing to consider these DOW lists before deciding not to invoke Section E for the August quarter, Hatchigian claims the Trustees acted in an arbitrary and capricious manner.[2]

Even accepting that Mr. Hatchigian's points as true, there is not enough on the record to indicate that the Trustees acted in an arbitrary and capricious manner in failing to extend Supplemental Coverage during the August 2008 quarter. Section E Supplemental Coverage is a

---

[2] Mr. Hatchigian also claims that the Trustees acted in an arbitrary and capricious manner by failing to extend coverage to him as a result of disability at his August 2008 administrative appeal. Because the Complaint only raises the Trustees' decisions to deny benefits initially in August 2007 and subsequently at the time of Hatchigian's January 2008 appeal, the Court will not consider this argument.

purely discretionary provision, applies only for those who do not qualify under the Plan to normally receive benefits and left up to the individual judgment of the Trustees whether or not to extend the coverage during any given period. While the Trustees may not have considered the DOW lists for the August 2007 quarter, there are other reasons they could have chosen not to extend Supplemental Coverage—including whether or not there were enough assets in the plan to warrant extension.[3] Moreover, the Trustees decided to extend Supplemental Coverage under Section E in May 2009 upon a determination that the Fund's assets were sufficient and a sufficient number of employees were out of work—demonstrating that there are circumstances under which they will decide to do so. As a result, there is no indication that the Trustees acted in an arbitrary and capricious manner or abused their discretion in determining not to invoke Section E Supplemental Coverage. As such, Defendants' Motion will be granted as to the ERISA claim.

### B. Hatchigian's LRMA Claim

Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has found that this section not only provides federal

---

[3] Additionally, Mr. Hatchigian claims that there is no evidence in the record that the Fund was unable to pay benefits to participants, and that Trustee Brian Burrows indicated that the Fund has never been insolvent. (Pl.'s Resp. Opp'n. Summ. J., Ex. A, Deposition of Brian Burrows, 40:4–13, 4/3/2012.) Mr. Burrow's response is ambiguous; when asked if he was aware if the Fund was ever insolvent, he simply replies "No." (Id.) In any event, mere solvency does not necessitate the Trustees to find the Fund's assets are sufficient to extend Section E Supplemental Coverage.

court jurisdiction over controversies involving collective bargaining agreements, but it also authorizes federal courts to fashion a body of federal law for the enforcement of these agreements. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 403 (1988) (citing Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448, 451 (1957)). Thus, Section 301 has been found to preempt any state rule that "purports to define the meaning or scope of a term in a [labor] contract suit." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985). This has been interpreted to mean that "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (quoting Int'l Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987)).

Defendants contend, albeit in a footnote, that the Health and Welfare Fund and its Trustees are not bound by the Collective Bargaining Agreement ("CBA") between the IBEW Union and "employers," defined by the CBA as individual firms who are recognized by an assent to the Agreement. (Defs.' Mot. Summ. J., Ex. 3, CBA, D20139.) Defendants note, also, that the only requirement of the CBA that pertains to the Health & Welfare Fund is that the employers must contribute funds to it. (Id. at D20148.) In other word, nothing compels the Trustees of the fund to implement Section E or to make specific payments to individual employees.[4] Because there is no indication that the Trustees are bound by the CBA or that there was any actual breach, Defendants' Motion will be granted as to the LMRA claim.

IV.     **CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment is granted. Mr.

---

[4] Plaintiff does not address this argument or Count II in its Response.

11

Hatchigian cannot demonstrate that the Health & Welfare Fund or its Trustees abused their discretion when deciding not to invoke Section E of the Plan and provide Supplemental Coverage to Mr. Hatchigian and other employees. Even if there were a sufficient number of employees out of work such that implementation of Section E was appropriate, there is no evidence that the fund had significant assets to do so. Additionally, there is nothing in the facts to suggest that the Health & Welfare Fund or its Trustees were parties to the Collective Bargaining Agreement, much less to find that they breached the agreement.

      An appropriate Order follows.